UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
AT ERIE

| | |
|---|---|
| CHRISTOPHER GILLINGHAM, | |
| Plaintiff, | Civil Action No. 1:16-cv-174 Erie |
| v. | |
| | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| CITY OF MEADVILLE, | |
| Defendant. | |

## I. INTRODUCTION

Plaintiff Christopher D. Gillingham, a firefighter for Defendant City of Meadville, instituted this action against Defendant for alleged violations of the Americans with Disabilities Act ("ADA") and the Pennsylvania Human Relations Act ("PHRA"). Plaintiff claims that Defendant discriminated against him based on his post-traumatic stress disorder ("PTSD") by demoting from the rank of Captain to Firefighter. Plaintiff also claims that Defendant failed to provide reasonable accommodations for his PTSD.

Currently before the Court is Defendant's motion for summary judgment. Dkt. No. 26. Defendant moves to dismiss each of Plaintiff's claims, arguing that Plaintiff cannot produce evidence sufficient to establish a prima facie case for disability discrimination, that Defendant's proffered reason for demoting Plaintiff was pretextual, or that Defendant failed to provide reasonable accommodations to Plaintiff for his disability. Plaintiff opposes the motion. Dkt. No.

30. Having reviewed the motion, the opposition thereto, the record of the case, and the relevant legal authority, the Court will grant in part and deny in part the motion. The reasoning for the Court's decision is set forth below.

## II. BACKGROUND[1]

### A. Plaintiff's Employment

Plaintiff was hired as a firefighter for the City of Meadville Fire Department ("Fire Department") in 2003. Larndo Hedrick ("Hedrick") was the Fire Chief at the time that Plaintiff was hired and remained the Fire Chief at all times relevant to this litigation. Plaintiff and Hedrick had known each other since childhood and considered each other a friend at the time of Plaintiff's hiring. However, Plaintiff alleges that their relationship soured shortly after Plaintiff was promoted to the rank of Captain in 2007.

### B. Plaintiff's Disability

Plaintiff served in the Marine Corp prior to being hired by the Fire Department. Following his service in the Marines, he was diagnosed with PTSD and, in 2000, received a disability benefit determination of 30% from the Department of Veterans Affairs (20% for chronic migraine headaches and 10% for PTSD). On March 2, 2011, Plaintiff came to Hedrick's office in an emotionally distraught state. Dkt. No. 28-2 at 4. Plaintiff shared with Hedrick that he was receiving treatment from the Behavioral Health Clinic at the Erie VA Medical Center ("VA") and that he needed time off to continue the treatment. *Id.* Hedrick placed Plaintiff on administrative leave that same day. *Id.*

---

[1] The following factual allegations are undisputed by the parties, unless otherwise noted. *See* Dkt. Nos. 27 and 31.

Thereafter, Hedrick contacted Joseph Chriest, the Manager for the City of Meadville and relayed to him the conversation he had with Plaintiff. *Id*. Chriest, in turn, sent a letter to Dr. Jeanne Piette, Plaintiff's treating psychologist at the VA, in which Chriest asked Dr. Piette to address whether Plaintiff: (1) had a disability; (2) was receiving treatment for the disability; (3) was "fit for duty as a Captain in the City of Meadville Fire Department"; and (4) what accommodations, if any, Plaintiff required. *Id*. at 9. Dr. Piette responded to Chriest's inquiries in a letter dated March 15, 2011. *Id*. at 15. She confirmed that Plaintiff had been receiving treatment at the VA for PTSD and expressed her opinion that Plaintiff was "able and ready to return to work." *Id*. With respect to the need for accommodations, she stated:

> Any need for accommodation will vary due to the nature of PTSD. It is likely that Mr. Gillingham will do well and require little to no accommodation. I recommend that Mr. Gillingham be allowed time as request to participate in treatment. Mr. Gillingham seems to be a reliable judge of when he needs time off work for appointments or for breaks to reduce stress.

*Id*.

### C. Plaintiff's Negative Interactions with Hedrick

As stated above, Plaintiff and Hedrick were friends at the time that Plaintiff was hired by the Fire Department; however, the relationship soured after, Plaintiff alleges, he was promoted to Captain in 2007. Plaintiff further alleges that once Hedrick learned of Plaintiff's PTSD diagnosis, Hedrick would purposely try to trigger his PTSD in an effort to create a pretext for demoting and/or terminating Plaintiff. Plaintiff points to the following as evidence of Hedrick's alleged duplicitous motivation.

#### 1. The February 28, 2011 Incident

On February 28, 2011, Plaintiff, several other firefighters, and a police officer were eating lunch in the fire station. At one point during the lunch conversation, Plaintiff said he

3

would shoot Chris Thoreson, a fellow firefighter. Plaintiff claims that the comment was said in a joking manner and that everyone who heard it understood it as such. Nevertheless, Hedrick heard about the incident and required Thoreson to submit a report. *See* Dkt. No. 28-5 at 16. In the report, Thoreson also describes the incident as a joke and further states that he is submitting the report only because he was ordered to do so by his supervisor.

### 2. The March 7, 2011 Incident

As discussed above, on March 2, 2011, Plaintiff requested administrative leave from Hedrick so that he could receive treatment at the VA for his PTSD. Hedrick initially granted the request, but later asserted that Plaintiff misled him about needing time off. Hedrick called Plaintiff into a meeting, also at the meeting were Joseph Sciallo, a union representative, and Thomas Licinski, the Deputy Chief of Police. Hedrick accused Plaintiff of lying about needing time off for treatment and subsequently demoted him from the rank of Captain to Firefighter. Plaintiff grieved the demotion and Manager Chriest reinstated Plaintiff's Captain's rank.

### 3. The Two Heated Arguments between February 2011 and March 2013

Plaintiff testified that he recalls two times between February 2011 and March 2013 when Hedrick "got in [his] face," where Hedrick was "actually nose to nose, chest to chest, in [Plaintiff's] face yelling." Dkt. No. 28-1 at 16, 62:14-15, 20-21. He does not recall specific details about these two incidents, but does recall that during the second incident, as he turned to walk away, Hedrick grabbed him and Plaintiff told him not to ever touch him again. *Id*. at 63:18-25.

4

### 4. Hedrick Requested a Copy of Plaintiff's Medical Records

At some point in time, Hedrick asked Barbara Hall, a payroll clerk for the City of Meadville, for a copy of Plaintiff's medical records, which she refused to provide to him. Ms. Hall does not recall exactly when this conversation occurred.

### 5. The March 15, 2013 Incident

On March 15, 2013, Plaintiff and Hedrick had a third heated argument. This one ultimately led to Plaintiff's demotion. On that day, the Fire Station experienced a technical problem with its radios. Plaintiff alleges that Hedrick became very angry and got in Plaintiff's "face and [] started screaming" at him. Dkt. No. 28-1, p. 21 at 82:20-25. Plaintiff claims that Hedrick was so close to him that he was spitting on Plaintiff as he yelled. Plaintiff decided to take "comp" time and leave the Fire Station; however, as he tried to leave, Hedrick stood in his way. Plaintiff was able to get around Hedrick and leave the station. When he returned to the station a couple of hours later, Hedrick tried to apologize to him, but Plaintiff would not accept his apology. Firefighters Darren Hall and Ryan Carlson witnessed the confrontation between Plaintiff and Hedrick and submitted statements that are consistent with Plaintiff's testimony regarding the incident. Dkt. No. 28-2 at pp.23-24.

On April 1, 2013, Hedrick issued Plaintiff a disciplinary notice based on the March 15 incident and demoted him from the rank of Captain to Firefighter. Plaintiff grieved the demotion, but Manager Chriest upheld the demotion. Manager Chriest also issued a disciplinary warning letter to Hedrick based on the March 15 incident.

## III. STANDARD OF REVIEW

Summary judgment is appropriate if, drawing all reasonable inferences in favor of the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## IV. DISCUSSION

### A. Plaintiff's Discrimination Claims

Plaintiff charges that Defendant discriminated against him based on his PTSD disability when Hedrick confronted and later demoted him from the rank of Captain to Firefighter. He alleges that Defendant's actions violate the ADA and the PHRA. The ADA was enacted in 1990 to "prevent otherwise qualified individuals from being discriminated against in employment based on a disability." *Gaul v. Lucent Techs. Inc.*, 134 F.3d 576, 579 (3d Cir. 1998) (citing 29 C.F.R. pt. 1630, app. at 347-48 (1997)). Under the ADA, employers are prohibited from "discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." *Id*. (quoting 42 U.S.C. § 12112(a) (1995)).[2]

Plaintiff's discrimination claim is governed by the familiar burden shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981). Under this framework, Plaintiff bears the initial burden of establishing a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. If he is able to establish a prima facie case, "the burden shifts" to Defendant to "articulate some legitimate, nondiscriminatory reason" for the adverse employment action it took against Plaintiff.

---

[2] The Third Circuit has held that the "PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently." *Fosold v. Justice*, 409 F.3d 178, 184, n. 8 (3d Cir. 2005) (quoting *Fogleman v. Merch Hosp., Inc*., 283 F.3d 561, 567 (3d Cir. 2002)). The parties do not claim that this Court should apply PHRA in a manner different from the provisions of ADA. Therefore, the Court will apply to Plaintiff's PHRA claims to the same federal standard applicable to her ADA claims.

*Id*. If Defendant carries this burden, the burden of production shifts back to Plaintiff to establish by a preponderance of the evidence that Defendant's proffered reason was merely a "pretext" for discrimination. *Id*. at 804. If Plaintiff is unable to meet either of his burdens under this framework, Defendant is entitled to summary judgment. On the other hand, if Plaintiff satisfies both of these burdens, summary judgment must be denied.

### 1. Plaintiff States a Prima Facie Case of Discrimination

In order to establish a prima facie case of discrimination under the ADA (and the PHRA), Plaintiff must demonstrate: "(1) that he is disabled within the meaning of the ADA, (2) that he is otherwise qualified for the job, with or without reasonable accommodations, and (3) that he was subjected to an adverse employment decision as a result of discrimination." *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010) (citing *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999)).

Here, Defendant does not contest the first and second elements of Plaintiff's prima facie case. It does, however, challenge the third element, arguing that the record does not support a finding that Plaintiff's demotion was the result of discrimination. Defendant argues that Plaintiff is unable to satisfy the causation prong of his prima facie case because he is "unable to adduce any evidence of discriminatory statements or other evidence of discriminatory motives." Dkt. No. 26 at 11. At best, Defendant argues, Plaintiff has only established that he and Hedrick had a "strained relationship." *Id*.

This Court disagrees. Plaintiff has produced evidence that Hedrick "was constant[ly] antagonizing" him, would get "in [his] face", and physically touched him in anger at least twice. *See* Dkt. 28-1, p. 16 at 61-62, pp. 23-24. Plaintiff testified that he never witnessed Hedrick treat any other firefighter the way he treated Plaintiff. *Id*. at p. 16, 63:10-13. In addition, Plaintiff

7

points to the fact that Hedrick demoted him within days of Plaintiff informing Hedrick about his PTSD diagnosis and need for treatment. While Hedrick claimed that he demoted Plaintiff for lying about needing time off for treatment, Plaintiff asserts that Hedrick made up the lying allegation as a pretext for demoting him due to his disability. Plaintiff points to the fact that Manager Chriest overturned the demotion as evidence that Hedrick made up the lying allegation. Dkt. No. 28-5 at pp. 17-19. Lastly, Plaintiff presents evidence, in the form of a statement from Firefighter Thoreson, that Hedrick was attempting to make Plaintiff appear dangerous by forcing fellow firefighters to report incidents that they did not think were reportable or risk being fired themselves.[3] *Id.* at p. 16.

While Plaintiff does not present direct evidence of discrimination, the Court concludes that foregoing circumstantial evidence is sufficient for a trier of fact to reasonably conclude that Hedrick's actions in prompting a confrontation with Plaintiff and later demoting him based on that confrontation were motivated by discrimination animus. *See EEOC v. Grane Healthcare Co.*, 2 F. Supp. 3d 667, 699 (W.D. Pa. 2014) (quoting *Desert Palace, Inc. v. Costa*, 539, U.S. 90, 100 (2003) ("Circumstantial evidence is not only sufficient to sustain a finding of liability for intentional discrimination, 'but may also be more certain, satisfying and persuasive than direct evidence.'"). Therefore, Plaintiff has established a prima facie case for discrimination.

### 2. Plaintiff Presents Sufficient Evidence from which a Trier of Fact Could Reasonably Conclude that the Defendant's Pro-Offered Reason for Firing Plaintiff Is Pretextual

Having determined that Plaintiff stated a prima facie claim for discrimination under the ADA and PHRA, the burden now shifts to Defendant to articulate a legitimate, non-

---

[3] Plaintiff also claims that at least one firefighter told him that Hedrick had targeted him for demotion or termination because of his diagnosis. He and his wife submitted affidavits to that effect in support of Plaintiff's opposition to Defendant's motion. Defendant urges this Court to disregard the affidavits because they constitute hearsay within hearsay. The Court need not resolve this issue because it does not rely on the affidavits in resolving the motion.

8

discriminatory reason for its decision to terminate Plaintiff. *McDonnell Douglas*, 411 U.S. at 802. Defendant claims that it demoted Plaintiff because his conduct during the March 15, 2013 incident was determined to be unbecoming and unacceptable for an individual holding a supervisory position in the Fire Department. Dkt. No. 26 at 13. This is a legitimate, non-discriminatory reason for terminating Plaintiff, thus the burden returns to Plaintiff to show that Defendant's stated reason for demoting him was merely a pretext for discrimination. *Id*. at 804. Plaintiff must now point to evidence that: "1) casts sufficient doubt upon … the legitimate reason[] proffered by [Defendant] so that a factfinder could reasonably conclude that [the] reason was a fabrication" or 2) permits the factfinder to reasonably infer "that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes v. Perskie*, 32 F.3d 759, 762 (3d Cir. 1994).

Plaintiff does not dispute that the March 15, 2013 incident occurred, but he disputes that it was the basis for his demotion. Rather, he argues, Hedrick had targeted him for discipline or termination because of his PTSD and the March 15 incident is "clear evidence of this." Dkt. No. 30 at 12. During that incident, Plaintiff argues, Hedrick used a non-emergency situation to immediately escalate a conversation into a heated argument, where "Hedrick came at him from across the room, screaming and swearing, and actually initiated physical contact with [Plaintiff], pushing his chest up into [Plaintiff's chest]." *Id*. Plaintiff further asserts that when he tried to remove himself from the situation, Hedrick attempted to physically block him, something the other firefighters in the room attested to. Plaintiff claims that this incident is part of a pattern and practice that developed after Hedrick learned of his PTSD diagnosis. He further claims that he is the only officer to have ever been demoted after an argument with Hedrick, something Defendant does not dispute.

Taken as a whole, and viewed in the light most favorable to Plaintiff as this Court is required to do, the Court concludes that the foregoing evidence, coupled with the fact that Hedrick demoted Plaintiff within days of learning of his PTSD diagnosis and the fact that Hedrick coerced Firefighter Thoreson into reporting the gun joke incident, is sufficient for a trier of fact to reasonable conclude that discrimination was the motivating factor behind Plaintiff's demotion. *See Resco Products, Inc. v. Bosai Minerals Group, Co., Ltd.*, 158 F. Supp. 3d 406, 417 (W.D. Pa. 2016) (in deciding a summary judgment motion, a court must "draw all reasonable inferences, and resolve all doubts, in favor of the nonmoving party"). Thus, Defendant's motion is denied as to Plaintiff's discrimination claims.

### B. Plaintiff's Failure to Accommodate Claims

"[F]ailure to make a reasonable accommodation for a disabled and qualified employee constitutes discrimination under the ADA." *Williams v. Philadelphia Housing Authority Police Dept.*, 380 F.3d 751, 771 (3d Cir. 2004). Plaintiff claims that Defendant failed to make such an accommodation when it "fail[ed] to implement the reasonable accommodation of allowing [Plaintiff] to take a break and remove himself from a stressful situation." Dkt. No. 30 at 15. He argues that when Plaintiff "actually attempted to exercise the accommodation in question—specifically, by removing himself from a stressful (actually, actively hostile) situation—Hedrick, his direct supervisor, refused to allow [Plaintiff] to do so." *Id.* at 16. In fact, Plaintiff claims, "Hedrick physically blocked [Plaintiff] from removing himself from the situation, and subsequently mischaracterized [Plaintiff's] attempt to avail himself of this accommodation as part of the conduct used to rationalize [Plaintiff's] demotion." *Id.*

It is unclear from the record whether Plaintiff actually requested an accommodation from the Fire Department for his disability. While Plaintiff requested an administrative leave of

absence in March 2011, he returned to work full time just a few days later. Moreover, in response to Defendant's inquiry as to whether Plaintiff required accommodations, Plaintiff's treating physician, Dr. Piette, responded that: "It is likely that [Plaintiff] will do well and require *little to no* accommodation . . . [Plaintiff] seems to be a reliable judge of when he needs time off of work for appointments or for breaks to reduce stress." Dkt. No. 28-2 at 15 (emphasis added). Dr. Piette's letter is ambivalent as to whether Plaintiff required accommodations and the record unclear as to how either Defendant or Plaintiff responded to the letter.

Nevertheless, even assuming that Plaintiff had an accommodation in place that allowed him to take "breaks to reduce stress," he received such an accommodation during the March 15, 2013 incident. Plaintiff testified that Hedrick attempted to block him from leaving the room during the argument, and firefighters Hall and Carlson also gave statements that Hedrick stood in Plaintiff's way when he attempted to leave the room. Nevertheless, Plaintiff concedes that he was still able to leave the room, and indeed left the Fire Station for several hours before returning to work. In other words, Plaintiff was able to take a "break[] to reduce [his] stress" after the argument.

Nor was the fact that Plaintiff left the Fire Station for a few hours used as a basis for demoting him, as Plaintiff claims. To the contrary, the disciplinary letter clearly states that Plaintiff was demoted because he "verbally attacked Fire Chief Hedrick"; the letter does not reference the fact that Plaintiff left the Fire Station. *Id*. at 27. Therefore, this Court concludes that there is no dispute of material fact that Defendant failed to make reasonable accommodations for Plaintiff's disability and the claims based on this allegation must be dismissed.

## V. CONCLUSION

For the foregoing reasons, the Court HEREBY GRANTS in part and DENIES in part Defendant's motion for summary judgment [Dkt. No. 26].

Dated this 28th day of September, 2018.

Barbara Jacobs Rothstein
U.S. District Court Judge